UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ATARAXIA, LLC dba MERCHANT PROCESSING PROS,<br><br>Plaintiff,<br><br>v.<br><br>MR. JJ, LLC, a Delaware limited liability company; 2OG HOLDINGS, LLC, a Florida limited liability company; RONALD PROCHAK, an individual; JAMES LEFLER, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-00379-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff's Motion to Compel Mediation (Dkt. 97); Motion for Summary Judgment (Dkt. 98); and Motion for Status Update (Dkt. 107). Additionally, Plaintiff submitted supplemental briefing in support of its motion for entry of default judgment (Dkt. 103) in response to the Court's prior order (Dkt. 100).

## I. BACKGROUND

The Court set forth the factual background in detail in its prior Memorandum Decision and Order (Dkt. 49 at 2–3). The following background is relevant to the pending motions:

This lawsuit concerns a dispute over three asset purchase agreements for rights to future compensation in the electronic payment processing services industry (Dkt. 66 ¶ 27). Agreement 1 was with Defendant Mr. JJ, LLC (Mr. JJ), and Agreements 2 and 3 were with Defendant 2OG Holdings, LLC (2OG) (*id.*). Defendants Prochak and Lefler are the sole two members of Mr. JJ,

while Prochak is the sole member of 2OG (*id.* ¶¶ 2–3). Defendant Prochak signed all three agreements on behalf of Mr. JJ and 2OG (*id.* ¶¶ 72, 77).

Plaintiff Ataraxia, LLC dba Merchant Processing Pros (MPP) brought six claims against Defendants: breach of contract as against Mr. JJ and 2OG; violation of the Idaho Consumer Protection Act (ICPA) as against Mr. JJ and 2OG; fraud as against Mr. JJ, 2OG, and Prochak; and intentional interference with contract against Lefler (Dkt. 66). The Court previously granted default judgment against Defendants Mr. JJ, LLC, 2OG Holdings, LLC, and James Lefler but deferred determining damages (Dkt. 100). MPP also moved for summary judgment against Defendant Ronald Prochak—the only non-defaulting defendant—on its fraud claim (Dkt. 98; Dkt. 107).

Prochak, proceeding pro se, has not responded to any of the motions.[1] The record does, however, contain a declaration Prochak submitted in support of Defendants' earlier renewed motion to dismiss and for summary judgment (Dkt. 39-2), which the Court considered in resolving MPP's motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "may consider other materials in the record").

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Prochak did, however, file a "Supplemental Objection to Plaintiff's Damages Model Under Rule 55(b)(2)," challenging the calculation of damages sought against the defaulting Defendants (Dkt. 106). But the filing does not constitute a response to the pending motions. Prochak, who is not an attorney, may not represent the other Defendants. *See* 28 U.S.C. § 1654. Further, because default has been entered against those Defendants, they may not oppose the motion for default judgment unless the defaults are first set aside. *See* Fed. R. Civ. P. 55(c). Accordingly, the Court strikes Prochak's objection.

law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* The Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* at 255.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation modified). A nonmoving party's failure to respond to a motion for summary judgment does not constitute consent to the granting of said motion. Dist. Idaho Loc. Civ. R. 7.1(f)(2). Such failure, however, allows the Court to consider the uncontested material facts as undisputed for purposes of considering the motion. *Id.*

## III. ANALYSIS

MPP argues on summary judgment that the Court should pierce the corporate veil to impose liability on Prochak. MPP further argues that summary judgment is appropriate against Prochak for fraud.

### A. Piercing the Corporate Veil

MPP first asks the Court to impose liability on Prochak for the actions of LLC Defendants Mr. JJ and 2OG because it maintains that Prochak's actions caused Mr. JJ and 2OG to act fraudulently (Dkt. 98-1 at 3). Generally, "[m]embers of an LLC are not liable for the misconduct of the company unless it is proven that the company is the alter ego of the member." *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 329 P.3d 368, 376 (Idaho 2014). Under Idaho law, a party

seeking to impose personal liability on an LLC member for the company's obligations must establish: "(1) a unity of interest and ownership to a degree that the separate personalities of the [company] and individual no longer exist and (2) if the acts are treated as acts of the [company] an inequitable result would follow." *Lunneborg v. My Fun Life*, 421 P.3d 187, 199 (Idaho 2018) (quoting *Vanderford Co. v. Knudson*, 165 P.3d 261, 270–71 (Idaho 2007)).

The unity of interest prong considers whether there is a distinction between the personalities of the individual and the limited liability company, recognizing that an LLC's failure to observe corporate formalities and a member's control over the LLC, standing alone, do not establish unity of interest. *Wandering Trails*, 329 P.3d at 376–77 (citing Idaho Code § 30-25-304 (2015)). The second prong asks whether respecting the corporate form would produce an inequitable result. *Wandering Trails*, 329 P.3d at 376. This prong requires more than the prospect of an unsatisfied judgment but less than an affirmative showing of fraud. *Lunneborg*, 421 P.3d at 201. The inequity must arise from, or be connected to, the individual's control of the entity rather than merely from an ordinary business failure. *Idaho Inj. Laws., PA*, *P.L.L.C. v. Litster Frost Inj. Laws.*, 595 P.3d 799, 810 (Idaho 2026).

Here, MPP asserts that Prochak utilized LLC Defendants as his alter ego because he "commingled personal funds with business funds, treated the assets of Mr. JJ and 2OG as his own, failed to maintain corporate formalities, and did not transact business at arm's length" (Dkt. 98-1 at 4). But MPP provides no evidentiary support for these assertions. Rather, it cites only the second amended complaint, which likewise contains bare-bones conclusory allegations that Individual Defendants and LLC Defendants "used each other as mere shells" and other recitations of the alter-ego factors (*id.*) (citing Dkt. 66 ¶ 9). "Th[ese] general allegation[s] [are] not adequate. Without proof for the Court to pierce the corporate veil, it cannot hold [Prochak] liable for the actions of

[LLC Defendants]." *LaKamp v. Runft*, No. 20-cv-00544-DCN, 2023 WL 2333397, at *16 (D. Idaho Mar. 1, 2023). Accordingly, the Court declines to pierce the corporate veil and instead examines MPP's claims against Prochak based on his own conduct, rather than the conduct of LLC Defendants.

**B. Fraud**

To prevail on summary judgment on a fraud claim, MPP must prove by clear and convincing evidence the following nine elements: "(1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." *VanRenselaar v. Batres*, 575 P.3d 866, 878 (Idaho 2025). Acting within the scope of one's membership in an LLC shields the individual member from liability as to the specific tort alleged. Idaho Code § 30-25-304(a). A member may be personally liable for any torts committed by the company if the evidence establishes that he "specifically directed, actively participated in, or knowingly acquiesced in the fraudulent activities." *VFP VC v. Dakota Co.*, 109 P.3d 714, 722 (Idaho 2005), *abrogated on other grounds by Wandering Trails*, 329 P.3d 368.

Here, the agreements contain the following representations relevant to MPP's fraud claim. In Agreement 1, Defendants Mr. JJ and Prochak, as signatory, represented that "there is no suit, claim, action, proceeding or investigation pending or threatened against Seller or any of its officers or directors relating to or affecting Seller's operations or the Acquired Asset, nor are there any circumstances that might give rise to the same, to the best of Seller's knowledge" (Dkt. 66-1 at 4). In Agreements 2 and 3, Defendants 2OG and Prochak, as signatory, represented that "Seller owns and has, and will convey at Closing, good and marketable title to the Acquired Asset, free and clear of any liens" (Dkt. 66-2 at 4; Dkt. 66-3 at 4).

MPP seeks summary judgment against Prochak on its fraud claim with respect to two transactions. First, MPP argues that Prochak fraudulently induced MPP to execute Agreement 1 by misrepresenting that there was no pending litigation affecting Mr. JJ's operations or the residual portfolios sold to MPP (Dkt. 98-1 at 5). Second, it contends that Prochak fraudulently induced MPP to execute Agreements 2 and 3 by misrepresenting that 2OG would convey good and marketable title to all residuals under the respective portfolios (*id.* at 6–7). But MPP has provided no evidence establishing any alleged conduct by Prochak beyond his role as a member of LLC Defendants and as signatory to the three agreements that would establish his personal liability for fraud (*see* Dkt. 98-2 ¶ 13 (alleging "Prochak, as signatory, represented that there was no pending litigation affecting Mr. JJ's operations or the residual portfolios sold to Plaintiff"); *id.* ¶ 20 (alleging "Prochak, as a member of Mr. JJ, was aware of the litigation involving Mr. JJ"); *id.* ¶ 31 (alleging Prochak, as signatory, represented that 2OG had good and marketable title to the residual portfolios sold to Plaintiff")). Nor has MPP produced any evidence that Prochak directed LLC Defendants' fraudulent conduct or that he actively participated in that conduct.

As to Agreement 1, drawing all inferences favorable to Prochak, the record supports only the conclusion that Prochak knew of the Clearent and FSB litigation (*see* Dkt. 39-2 ¶¶ 32, 34 (Prochak Declaration)). Although Prochak signed Agreement 1, he did so on behalf of Mr. JJ—not in his individual capacity. Nor does the record establish that he had an independent duty to disclose the litigation. Furthermore, Prochak argues in his declaration that the pending litigation did not implicate Agreement 1's litigation provision because none of the merchant accounts at issue in the pending litigation were sold to MPP under any of the agreements and the litigation could not affect Mr. JJ's operations (*id.* ¶¶ 32–35). Other than MPP's conclusory statement that "both the Clearent Action and the FSB Action involve the sale of residuals that Mr. JJ subsequently

purported to sell to [it]," no evidence has been produced to the contrary. Accordingly, even assuming the litigation provision was inaccurate, MPP has not established that Prochak is personally liable for fraud based on that representation. Therefore, the Court finds MPP is not entitled to summary judgment on its claim that Prochak fraudulently induced MPP to execute Agreement 1.

MPP's claim that Prochak fraudulently induced MPP to execute Agreements 2 and 3 fares no better. MPP does not allege that Prochak himself did not have good and marketable title to the residuals in Portfolio 2 and Portfolio 3. Rather, the contractual representations concerning good and marketable title were made by 2OG, with Prochak signing the agreements on its behalf. MPP identifies no evidence that Prochak personally made a knowingly false representation concerning title or otherwise participated in fraud. Therefore, the Court concludes MPP has failed to establish that it is entitled to summary judgment against Prochak on its fraud claims concerning Agreements 2 and 3.

### C. Motion to Compel Mediation

MPP also moves to compel Prochak to participate in mediation or, in the alternative, to excuse the parties from participating in mediation (Dkt. 97). Prochak did not respond. Attached to MPP's motion are several emails detailing MPP's efforts to coordinate mediation efforts with Prochak, to no avail (Dkt. 97-1 at 4–10). The Court therefore grants the motion and excuses the parties from participating in mediation.

### D. Damages

Finally, the Court turns to the amount of damages MPP may recover from the defaulting Defendants. In its prior order, the Court determined that default judgment was warranted against the defaulting Defendants on the claims asserted against them but concluded that the record did

not adequately support MPP's requested damages (Dkt. 100). The Court therefore requested supplemental briefing addressing the deficiencies in MPP's damages calculations (*id.*).

In its supplemental briefing, MPP clarifies that its damages theory rests on its fraud claim (Dkt. 103 at 4). MPP argues that, but for Defendants' fraud, it would not have entered into any of the three agreements and therefore would not have suffered the losses associated with those transactions (*id.*). Under this theory, MPP seeks to recover the residual income it claims it lost as a result of entering the agreements (*id.* at 8–9). MPP claims the following losses: $520,673.76 for Agreement 1 (Dkt. 104 ¶ 39); $226,516.80 for Agreement 2 (*id.* ¶ 45); and $274,461.44 for Agreement 3 (*id.* ¶ 50). In total, MPP seeks damages in the amount of $1,021,652.00 (*id.* ¶ 51).

To recover damages for fraud, a plaintiff must establish that it suffered injury as a result of the alleged fraud. *Bryant Motors, Inc. v. Am. States Ins. Cos.*, 800 P.2d 683, 687 (Idaho Ct. App. 1990). As the Idaho Supreme Court explained, "a party defrauded in a bargain may, on discovering the fraud, either rescind the contract and demand back what has been received under it, or he may affirm the bargain and sue and recover damages for the fraud." *Breshears v. Callender*, 131 P. 15, 17 (Idaho 1913). Here, MPP has chosen the latter.

When a plaintiff elects to affirm the bargain and seek damages, Idaho recognizes both the out-of-pocket and benefit-of-the-bargain rules for measuring fraud damages. *Apr. Beguesse, Inc. v. Rammell*, 328 P.3d 480, 490–91 (Idaho 2014). The out-of-pocket rule measures damages by the difference between the value of what the plaintiff received and the price paid or agreed to be paid, while the benefit-of-the-bargain rule measures damages by the difference between the value of what the plaintiff received and the value it would have had if it were as represented. *Id.* at 491. These measures are not exclusive. The governing principle is that a fraud victim is entitled to

compensation for every wrong that is the natural and proximate result of the fraud, and the measure adopted should achieve that result under the circumstances of the case. *Id.* at 491.

Regardless of the measure employed, the plaintiff must prove its damages with reasonable certainty. *Griffith v. Clear Lakes Trout Co.*, 152 P.3d 604, 611 (Idaho 2007). Although reasonable certainty does not require mathematical exactitude, it does require proof that the damages are not merely speculative. *Id.* Further, a defaulting defendant admits well-pleaded factual allegations, but not allegations concerning the amount of damages. Fed. R. Civ. P. 8(b)(6). The Court must therefore independently determine the amount of damages, even where default judgment has established liability. *See* Fed. R. Civ. P. 55(b)(2); *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012).

Here, MPP's theory of damages is consistent with Idaho's rule that a fraud victim may recover compensation for the natural and proximate consequences of the fraud. *Apr. Beguesse*, 328 P.3d at 491. The Court therefore considers whether MPP has sufficiently established the amount of residual income it lost.

In support of its damages, MPP submits the declaration of Jason Macek, an MPP member, who explains that he calculated each merchant's average monthly residuals using the first six months of available residual data and projected that amount over a twenty-four-month period (Dkt. 104 ¶ 37). He states that the six-month average accounts for variations in residuals and that, when a merchant stopped generating residuals before six months had elapsed, the calculation still divided the total residuals by six, resulting in a lower monthly average (*id.*) Macek further explains that the calculation uses the first six months of residuals even when a merchant's residuals declined during that period and limits the projection to twenty-four months, although the initial merchant term was three years (*id.*) Although Agreements 1 and 2 provide for a 10 percent attrition rate

when calculating shortfalls within the contractual benchmarks, Macek estimates that this negotiated rate exceeds the typical industry loss rate, which he believes to be less than 10 percent based on his ten years of industry experience and his observation that merchants commonly remain with a service provider for many years, often for the life of the business (*id.* ¶ 38).

Considering Macek's explanation of the methodology, his industry experience, and the limited twenty-four-month projection period, the Court finds that MPP has established its requested damages with reasonable certainty. The Court therefore awards MPP $520,673.76 for Agreement 1; $226,516.80 for Agreement 2; and $274,461.44 for Agreement 3, for a total award of $1,021,652.00.

The Court next considers whether the defaulting Defendants are jointly and severally liable for those damages. Under Idaho Code § 6-803(5), joint tortfeasors "shall be jointly and severally liable for the fault of another person or entity . . . where they were acting in concert or when a person was acting as an agent or servant of another party." For purposes of this statute, "acting in concert" is defined as "pursuing a common plan or design which results in the commission of an intentional or reckless tortious act." *Id.* Idaho law also recognizes that when the tortious acts of several parties concurrently cause an injury, each tortfeasor is liable for the whole of the damage. *Pollard v. Land W., Inc.*, 526 P.2d 1110, 1113 (Idaho 1974). Moreover, parties may be joint tortfeasors even when they act independently, provided each party's wrongful conduct was a proximate cause of the same indivisible injury. *Athay v. Stacey*, 128 P.3d 897, 907 (Idaho 2005). "Before they can be found to be joint tortfeasors in that circumstance, however, they must each engage in wrongful conduct that was a proximate cause of the injury." *Id.*

Here, MPP does not claim that the defaulting Defendants were acting in concert with one another or that one was acting as the agent or servant of another. Instead, it argues joint and several

liability is appropriate because its injuries are not divisible (Dkt. 103 at 9). MPP alleges that Mr. JJ fraudulently induced it to enter Agreement 1, while 2OG fraudulently induced it to enter Agreements 2 and 3 (Dkt. 66 ¶¶ 71–82). MPP further alleges that Lefler intentionally interfered with Agreements 2 and 3 despite knowing of those agreements (*id.* ¶¶ 83–87). MPP seeks damages for lost merchant residuals under all three agreements as a result of defaulting Defendants' fraud and intentional interference (Dkt. 103 at 4–5). But the alleged fraud involving Agreement 1 is distinct from the alleged wrongful conduct involving Agreements 2 and 3. Nothing in the record suggests that 2OG's fraudulent inducement or Lefler's intentional interference proximately caused the losses attributable to Agreement 1, or that Mr. JJ's fraudulent inducement proximately caused the losses attributable to Agreements 2 and 3. The record does, however, establish that both 2OG's fraudulent inducement and Lefler's intentional interference proximately caused the same injury: lost residual income MPP expected to receive under Agreements 2 and 3. Accordingly, the Court finds that 2OG and Lefler are jointly and severally liable for the damages attributable to Agreements 2 and 3.

MPP separately argues that because the two LLC Defendants operated under the same business name, shared a common member, and were used by Prochak and Lefler to carry out the alleged wrongful conduct, the Court should disregard their separate legal identities to prevent fraud and injustice (Dkt. 103 at 9–10). In support of its alter ego theory, MPP relies on the same conclusory allegations in the second amended complaint that it cited in arguing Prochak should be held liable for the actions of LLC Defendants (Dkt. 103 at 9–10) (citing Dkt. 66 ¶ 9). As explained above, those allegations merely recite alter-ego factors without evidentiary support. The Court therefore declines to pierce the corporate veil on this basis and rejects MPP's request to impose joint and several liability on the defaulting Defendants based on their alleged alter-ego

relationship. This conclusion does not disturb the joint and several liability of 2OG and Lefler for the indivisible injury arising from Agreements 2 and 3.

Therefore, the Court awards MPP $520,673.76 against Mr. JJ for fraudulent inducement relating to Agreement 1. The Court also holds 2OG and Lefler jointly and severally liable for $500,978.24 in damages arising from Agreements 2 and 3 for 2OG's fraudulent inducement and Lefler's intentional interference with those agreements.

## IV. ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion for Summary Judgment (Dkt. 98) is **DENIED**.

2. Plaintiff's Motion to Compel Mediation or Excuse Parties from Participation in Mediation (Dkt. 97) is **GRANTED**. The Court amends the scheduling order (Dkt. 70) and excuses the parties from participating in mediation and/or a settlement conference.

3. Plaintiff's Motion for Status Update (Dkt. 107) is **DENIED AS MOOT**.

4. Defendant Prochak's Supplemental Objection to Plaintiff's Damages Model (Dkt. 106) is **STRUCK** from the record.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff MPP and against Defendant Mr. JJ, LLC, in the amount of $520,673.76, and against Defendants 2OG Holding, LLC and James Lefler, jointly and severally, in the amount of $500,978.24, for a total judgment of $1,021,652.00.

**IT IS FURTHER ORDERED** that post-judgment interest shall accrue as provided by 28 U.S.C. § 1961.

DATED: October 28, 2026

Amanda K. Brailsford
U.S. District Court Judge